## GARLAND POWER & DEVELOPMENT COMPANY *v.* STATE BOARD OF RAILROAD INCORPORATION.

### Opinion delivered April 4, 1910.

1. STATUTES—CONSTRUCTION.—In order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted.    (Page 426.)

2. WATERS—INCORPORATION OF POWER COMPANIES.—The Act of May 13, 1905, providing that "the State Board of Railroad Commission" is authorized to grant a franchise to any corporation organized to produce power for manufacturing, etc., intended that the power to issue such franchises should be intrusted to the State Board of Railroad Incorporation.    (Page 426.)

3. MANDAMUS—EXERCISE OF DISCRETION.—While mandamus will not be granted to review the exercise of discretion by any board or officer, it may be invoked to compel a board or officer to exercise such discretion.   (Page 426.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk,* Judge; reversed.

*Moore, Smith & Moore* and *H. M. Trieber,* for appellant.

It is within the power of the court to alter the phraseology of a legislative act when such alteration is necessary to carry out the intention of the legislature. End. Int. Stat. § § 295, 319; 34 Ark. 263; 35 Ark. 56; 58 Ark. 113; 128 Pa. St. 593; 63 N. J. L. 291; 56 Wis. 425.

FRAUENTHAL, J.  This is an appeal from a judgment of the lower court sustaining a demurrer to a petition for a writ of mandamus.   The appellant alleged in its complaint "that it is a corporation organized under the general laws of the State of Arkansas providing for the incorporation of manufacturing and other business corporations, and that the chief and main business to be conducted by said corporation is the producing and manufacturing of electricity and electric current by water power for the purpose of furnishing power for manufacturing or reduction plants, for mining, milling or jigging operations, public utilities, and for furnishing light, heat and power;" that it owned a natural and principal power dam in Garland County, Arkansas, and had procured a charter for the development and operation of a water power.   It further alleged that it had fully complied with the requirements of the act of the Legislature entitled "An Act to develop the Water Powers of this State," which became a law on May 13, 1905 (Acts 1905, p. 769); and in detail set forth the facts showing a compliance with the provisions of said act.   It applied to the State Board of Railroad Incorporation for a franchise to erect such dam or dams in pursuance of said act of the Legislature; and it alleged that said Board of Railroad Incorporation refused to grant such franchise, basing its refusal upon the ground that it did not have the power under said act to grant such franchise. It asked in effect for a writ of mandamus directed to said Board of Railroad Incorporation requiring said board to exercise its

power and jurisdiction to entertain and pass upon the application of appellant for said franchise.

By section 2 of said act of the Legislature entitled "An Act to develop the water powers of this State," it is provided that "the State Board of Railroad Commission is authorized to grant to such corporation the franchise of erecting such dam or dams, which franchise shall state the maximum compensation per horse power to be received by such corporation for the use of the power generated; such power to be furnished at its principal power house or central station." In this State it appears that there is no board or commission which is designated by the name of "The State Board of Railroad Commission," and the principal question involved in the determination of this appeal is what board or commission did the Legislature intend to designate as authorized to issue franchises of the character applied for by appellant. It is obvious that the Legislature did not intend to create some new board or commission with power to grant such franchise, for nowhere in the act is any provision made for such creation or the membership of such board or commission. It is therefore apparent that the Legislature intended to confer this power on some board or commission already in existence, and to add to it this new duty. There are and were at the time of the passage of said act only two boards or commissions in the State to which this power could have been given, towit: "The State Board of Railroad Incorporation" and "The Railroad Commission of Arkansas." In order to arrive at the intent of the Legislature as to which of these boards or commissions it desired to name by this act, it is well to consider the duties imposed upon and the powers given to each of them by statute at the time of the passage of the act. For it is but reasonable to presume that the Legislature, in adding this duty to the board or commission then in existence, intended to place it with the board or commission having similar duties to perform. At the time of the passage of this act the principal duty of the "Railroad Commission of Arkansas" was to make reasonable and just rates of freight, express and passenger tariffs by persons or corporations operating railroad or express business in the State and to make rules and regulations therefor. It did not have the power nor was any duty imposed upon it

to grant any franchise to any corporation.' It was, however, at the time of the passage of this act the principal duty of the "State Board of Railroad Incorporation" to grant charters to railroads and thus to issue franchises. The duty imposed by the act of May 13, 1905, to issue franchises of the character herein applied for was similar to the duties that were then performed by the "State Board of Railroad Incorporation." It is true that in this act it is also provided that the maximum compensation or rate per horse power shall be stated and fixed, and the duties of the "Railroad Commission of Arkansas" related to the regulation of rates of tariffs. But we are of the opinion that the issuance of the franchise was the primary object of this act in designating the board or commission that should perform this duty, and that the naming of the maximum charge for the use of the power was secondary; and that the State Board of Railroad Incorporation was, under the other requirements imposed upon the corporation seeking such franchise, equally if not better prepared to pass upon the same.

The Secretary of State was by law made the secretary of the State Board of Railroad Incorporation. By section 2 of this act of May 13, 1905, it was provided that the corporation should file with the Secretary of State a plat of survey showing the location of its principal power damsite, the stream above such site, and the lands necessary for its development. The information relative to the character and extent of the business of such corporation was placed in the hands of the secretary of the State Board of Railroad Incorporation by the terms of this act; and it is from this plat, survey and data that the board or commission would receive information upon which it would act in passing upon the application for the franchise. The placing of this data in the office of the secretary of the State Board of Railroad Incorporation would tend to indicate that it was the body intended by the Legislature to pass upon the application for the franchise. The name of the body designated by this act to issue this franchise does not conform with either of said two boards or commissions then in existence, and in the verbiage used it might apply equally to either. But because at the time of the passage of this act the duty to issue franchises was intrusted with the "State Board of Railroad Incorporation," we

are of opinion that the Legislature intended to add to that board the duty to issue franchises of the character applied for by appellant. In order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substi- tued. 26 Am. & Eng. Ency. Law, 604; *Haney* v. *State,* 34 Ark. 263; *Reynolds* v. *Holland,* 35 Ark. 56; *Lancaster County* v. *Frey,* 128 Pa. St. 593; *State* v. *Timme,* 56 Wis. 425; Endlich on Interpretation of Statutes, § 319.

We are of the opinion that the words in the act, the "State Board of Railroad Commission," were intended to and should be the "State Board of Railroad Incorporation."

The writ of mandamus, however, will not be granted to review the exercise of any discretion of any officer or board. It can only be invoked to compel the officer or board to exercise such discretion. *Gunn* v. *Pulaski Co.,* 3 Ark. 427; *Brem* v. *Ark. County Court,* 9 Ark. 240; *Willeford* v. *State,* 43 Ark. 62; *Danley* v. *Whiteley,* 14 Ark. 687; *Howard* v. *McDiarmid,* 26 Ark. 100; *Black* v. *Auditor,* 26 Ark. 237; *McCreary* v. *Rogers,* 35 Ark. 298; *Branch* v. *Winfield,* 80 Ark. 61; *Rankin* v. *Fletcher,* 84 Ark. 156; 19 Am. & Eng. Ency. Law, 732. In this case it is alleged that the board refused to take any action upon the application made to it for the franchise because the members of the board were of opinion that they were not the body desig- nated by this act to perform that duty. We are of the opinion that the Legislature had the right to add to the State Board of Railroad Incorporation the duty to issue the franchise, and by this act that board was designated to perform that duty and to exercise within its proper discretion that power. The court therefore erred in sustaining the demurrer to the petition.

The judgment is reversed, and this cause is remanded with directions to overrule the demurrer.