ROWLAND v. WADLY.

Opinion delivered March 7, 1903.

1. WIDOW'S ALLOWANCE—HOMESTEAD.—The act of January 2, 1851, providing that where the whole estate of a deceased person did not exceed in value the sum of $300 the same should be allowed to the widow, so far as it concerned the homestead rights of minor children, was repealed by the homestead act of December 8, 1852.   (Page 275.)

2. TAX TITLE—TWO YEARS' STATUTE.—Section 4819, Sand. & H. Dig., providing, in substance, that no action for the recovery of lands against any persons who may hold such lands by virtue of a purchase at a tax sale shall be maintained unless it appears that the plaintiff was seized or possessed thereof within two years next before commencement of the suit, has no application where a widow permitted the joint homestead of herself and the minor heirs to forfeit and procured another to become purchaser, and, after reimbursing him, had him to assign the certificate of purchase to her vendee.   (Page 276.)

Appeal from Greene Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Reversed.

*J. D. Block* and *F. H. Sullivan,* for appellant.

Upon the death of Tolbert the title rested absolutely in the widow. 24 Ark. 561; 32 Ark. 824; 29 Ark. 280, 633, 407; 47 Ark. 504; 51 Ark. 429; 48 Ark. 230; 55 Ark. 572. The title of the Tolbert heirs was not diverted under the seven years' statute. 53 Ark. 400. A break in the continuity of the possession will arrest the operation of the statute. 22 Ark. 79; 27 Ark. 77; 48 Ark. 277; 49 Ark. 277. The sale and purchase at the instance of the widow was only a payment of taxes. 42 Ark. 215; 59 Ark. 364; 32 Ark. 97; 44 Ark. 504; 30 Ark. 453; 27 Ark. 637; 30 Ark. 95; 33 Ark. 195; 40 Ark. 42; 55 Ark. 104; 31 Ark. 344. Redemption defeats the power of the clerk to convey. 2 Blackw. Tax Tit. § 727; Blackw. Tax Tit. §§ 377-8; Cooley, Tax. 543. The burden of prov-

ing an innocent purchaser was upon Roberts. 29 Ark. 563; 31 Ark. 85; 35 Ark. 100; 56 Ark. 537. No title such as would start the two years' limitation was acquired. 62 Ark. 51; 55 Ark. 104; 63 Miss. 50; 69 Miss. 747; 44 Ia. 488; 83 Ia. 405; 8 Kans. 90; 57 Ark. 97; Sand. & H. Dig. 4819; 34 Ark. 390; 60 Ark. 163; 67 Ark. 411.

*Luna & Johnson,* for appellees.

Appellant's rights are barred by seven years' open, continuous and adverse possession. 1 Am. & Eng. Enc. Law (2d ed.) 832, 826. Appellees hold in privity of estate to the original adverse occupants, and are entitled to the benefit of their possession. 1 Am. & Eng. Enc. Law (2d ed.) 842; 41 S. W. 935. Further, on the proposition that the title was perfected by limitation, see 24 Ark. 390-5; 48 Ark. 312-7; 50 Ark. 141-155; 34 *Id.* 598.

BUNN, C. J. This is a suit by appellant against appellees to recover the west half of the southwest quarter of section 8, in township 16 north, range 6 east. The appellant deraigned title through an entry from the state by Thomas Tolbert, and alleged that Tolbert died intestate and in possession of the lands, owning the fee, and that his heirs at law after his death conveyed the lands to the plaintiff.

In his answer defendant Scott denied that plaintiff was the owner of the land, and alleged that he himself was in possession of a portion of it.

The answer of Wadly and wife, Exar Wadly, denied that the plaintiff was owner of the land, and denied that he was entitled to the possession; and they further state that Thomas Tolbert entered the lands, and that when he died he left surviving him a widow and some minor children, and that at the time of his death he occupied the land as his homestead, and that his entire estate did not exceed the value of $300, and therefore it vested in his widow, who conveyed the land in controversy afterwards to John Roberts, and he to William T. Roberts, from whom the defendant Exar Wadly inherited the premises. The answer also alleged that the land was sold on the 22d day of November, 1869, for the non-payment of the taxes of 1868, and one C. H. Bornhill became the purchaser at such sale, and received his certificate, and assigned the same to John Roberts, to whom the county clerk conveyed by his tax deed of the 29th of October, 1872, and he

conveyed to William T. Roberts, from whom said appellee Exar Wadly inherited as aforesaid. The seven years' statute of limitation was also pleaded, and it was alleged that the action was not begun (May 30, 1896) within three years from and after the heirs of Thomas Tolbert, under whom the plaintiff claims, attained their majority. The statute of two years in favor of the tax title was also pleaded, and it was alleged that the lands had not been redeemed from the tax sale within two years after the minor heirs of Tolbert had attained their majority; and two years' possession by defendants after said heirs had attained their majority. Defendants also claimed to have made improvements to the value of $371, and $300 taxes paid, and asked that this be set off against any damage that might be assessed against them in the suit, which was tried in equity.

This cause was tried on November 16, 1899, and final decree rendered in favor of defendants, and the plaintiff appealed.

There are two questions in this case. The first is, whether or not the act of January 2, 1851, providing that where the whole estate of a deceased person did not exceed in value the sum of $300, the same should be allowed to the widow, was repealed by the subsequent act of 8th of December, 1852, commonly known as the "homestead act," in so far at least as regards the homestead rights of the minor children conferred by the latter act.

In *Johnston* v. *Turner,* 29 Ark., 280, it was held that, under the homestead act, "the homstead estate is created equally for the benefit of the wife and minor children, and none of them can do an act that will impair or prejudice the rights of the others." This act was subsequent to the allowance act of 1851, under which the widow claimed the fee in the case at bar, and as the court in this case cited, and in many subsequent cases, construed the homestead act as giving the minor children rights inconsistent with the act of 1851, where a homestead is involved, it follows that in so far the homestead act of 1852 repealed by implication the allowance act of 1851, and the widow's allotment of the estate, when worth less than three hundred dollars, could not affect the rights of the minor children in the homestead, if included in such allowance to her as in this case; nor could the sale of her right in the homestead affect the right of the minor children in the least—in fact, would be void. See, also, *Chambers* v. *Sallie,* 29 Ark. 407; *Trotter* v. *Trotter,* 31 Ark. 145, where it was again held that there could be no division of the homestead by any

act of any of the parties having rights therein; and many other cases wherein the act of 1852 was under consideration.

In *Kirksey* v. *Cole,* 47 Ark. 504, wherein all the cases are collated, it is said that: "The design of the act of 1852 was to continue the homestead *entire,* as the home of the minor children, and that no right of the children should become operative to sever or divert such homestead from full occupancy and enjoyment as a home during the minority of any of the children." And in all the cases on the subject, the minor children are held to be incapable of waiving any right they may have.

It follows that the defendant's ancestor, William J. Roberts, took nothing by his purchase from John Roberts, whose claim rested upon the widow's conveyance of her allowance right, as the widow of the common ancestor and original enterer.

The second question is, whether or not the appellee held continuous, notorious and adverse possession against the appellant for the statutory period. It appears that the widow had left the premises when she sold to John Roberts, and he never took possession, but at once sold to William T. Roberts, who took possession, resided on the land about one year, cultivating a small portion of the same, and then moved off of it for his health, and something more than a year afterwards died, so that his possession at farthest only covered a period of three or three and a half years. There does not appear any *bona fide* possession by any one, except in a mere spasmodic way, for a period of about twelve years, when the appellees took possession, they having paid the taxes during the time, about six years next before the institution of this suit, and made improvements. The statute of seven years commenced to run, if at all, when the widow sold to John Roberts, and his grantee, William T. Roberts, took possession. We cannot find that unbroken possession extended over a period of seven years, in favor of appellees, but that they did have adverse and continuous possession for a shorter period extending up to the time of the institution of this suit.

The statute of two years in favor of tax titles did not apply. The widow was a joint tenant as to the homestead with the minor children, and under the proof and her own admissions she undertook to deprive these children of their interest in the homestead by suffering it to be forfeited for the non-payment of the taxes, procuring one Bornhill to become the purchaser at the sale, and afterwards reimbursing him for the outlay, and having him to assign his certificates of purchase to John Roberts, who had already, or im-

mediately afterwards, purchased the land from her, that is, her right to the same by said allotment. This was a scheme or device to get rid of the interest of the minor children in the homestead, and amounted to nothing more than a redemption from the tax sale by the widow.

For the reasons above given, the decree is reversed, and cause remanded, to be tried not inconsistently with this opinion.